Jane DOE and John Doe, her
husband, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 95–CV–0594C.

United States District Court,
W.D. New York.

Feb. 9, 1996.

Lipsitz & Ponterio, L.L.C. (John N. Lipsitz, of counsel), Buffalo, New York, for Plaintiffs.

United States Department of Justice, Torts Branch, Civil Rights Division (Charles D. Curran, of counsel), Washington, DC, for Defendant.

CURTIN, District Judge.

Plaintiffs Jane and John Doe have brought this action under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* ("FTCA"). The government has moved to dismiss for lack of subject matter jurisdiction, maintaining (1) that the plaintiffs' exclusive remedy for their alleged injuries is the Federal Employees' Compensation Act, 5 U.S.C. § 8101 *et seq.* ("FECA"), and (2) that the United States has not waived its sovereign immunity as to claims arising from injuries covered by FECA.

## BACKGROUND

In their complaint, the plaintiffs allege that in the fall of 1990, Jane Doe was a student in the phlebotomy training program at Erie Community College ("ECC"). As part of that program, she was required to perform a twelve-hour hospital rotation at the Buffalo Veterans' Administration Medical Center ("VAMC"), under the terms of a memorandum of affiliation between ECC and the VAMC. During the course of her assignment, she was required to draw blood, under proper supervision, from VAMC patients. However, she had been assured by the teaching staff at ECC that she would not have to take blood from patients with blood-borne communicable diseases.

The plaintiffs allege further that on November 28, 1990, Jane Doe was directed by

George Galfo, a VAMC employee acting within the scope of his employment, to draw blood from a patient whom Mr. Galfo knew to be infected with Human Immunodeficiency Virus ("HIV"). Ms. Doe was unaware that the patient was infected with HIV. She had not previously drawn blood from a patient, and had never observed the procedure in a hospital setting. While drawing blood from the HIV-infected patient, she was pricked by a needle carrying the patient's blood. Shortly thereafter, she was informed that the patient was HIV-positive.

The plaintiffs maintain that the VAMC and certain of its employees acted in a grossly negligent and/or reckless fashion, in directing Jane Doe to draw blood from a known HIV-infected patient, failing to inform her that the patient was HIV-positive, failing to administer the phlebotomy training program in a proper fashion, providing negligent supervision, failing to warn Ms. Doe of the danger of HIV exposure, failing to promptly take all steps possible to limit the effects of Ms. Doe's exposure, and refusing to provide Ms. Doe with available medication that may have slowed the progress of the virus.[1] As a result, they claim, Ms. Doe has suffered, and will continue to suffer, extreme mental and emotional distress; the loss of her husband's services, society, and comfort; and severe disruption of her lifestyle, resulting from the fear that her exposure to HIV will cause her to be infected with the virus and may lead to the development of Acquired Immune Deficiency Syndrome ("AIDS"). She has incurred, and will continue to incur, medical expenses, including the costs of medical monitoring.

The plaintiffs claim that as a result of Jane Doe's needle-stick injury, John Doe has suffered the loss of his wife's services and consortium. They also allege that the defendant breached a contractual duty to Jane Doe pursuant to the memorandum of affiliation between ECC and the VAMC; that the action of the defendant's employee, Mr. Galfo,

in directing Jane Doe to draw blood from an HIV-infected patient was intentional, and as such was extreme and outrageous conduct; and that following the incident on November 28, 1990, the defendant failed to take appropriate steps to prevent the improper disclosure of confidential information identifying Jane Doe as having been exposed to HIV infection.

In moving to dismiss, the defendant notes that on November 29, 1990, one day after the incident, Ms. Doe's VAMC supervisor prepared a FECA claim (Form CA-1: "Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation") for Ms. Doe. See Item 11, Ex. 1, Declaration of Jonathan G. Lawrence. The form stated that Ms. Doe had stuck herself in the right index finger with a needle that had been used on an HIV-positive patient.[2] It was received by the New York District of the Office of Workers' Compensation Programs ("OWCP"), United States Department of Labor, on December 26, 1990. Id. According to the District Director of that office, Jonathan G. Lawrence, the claim was "accepted for a puncture wound to [Ms. Doe's] right index finger" on January 15, 1991. Id. Ms. Doe "would be entitled to all benefits available under [FECA]," but as of September 17, 1995, "no claims for medical treatment or compensation [had] been received." Id.

The defendant also notes that in late December 1991, Jane and John Doe submitted FTCA administrative claims to the Department of Veterans Affairs ("DVA"). See Item 11, Ex. 2. By letter dated May 23, 1994, the DVA denied the claims on the grounds that, as a "student-volunteer employee" of the VAMC, Ms. Doe was considered an employee of the United States, and that as a result, FECA provided the Does' exclusive remedy for their alleged injuries. Id. The plaintiffs sought reconsideration of the DVA decision, but this was denied on February 7, 1995. Id., Ex. 3.

---

1. I note that the plaintiffs have not claimed that there is any evidence that Ms. Doe was, in fact, infected with HIV.

2. The form was completed in Ms. Doe's absence, and was not signed by her. See Item 11, Declaration of Jonathan G. Lawrence, ¶¶ 2–3 and Ex. 1. However, on December 12, 1990, Ms. Doe made a signed, handwritten amendment to the form, clarifying the circumstances under which she had stuck herself with the used needle.

In a memorandum in support of its motion to dismiss, the defendant argues (1) that the Secretary of Labor has accepted a FECA claim for Ms. Doe's alleged injuries, (2) that the Secretary's determination that FECA is applicable is conclusive, and not reviewable by this court, (3) that FECA provides the exclusive remedy for the plaintiffs' alleged injuries, including the injuries of emotional distress and loss of consortium, and (4) that this court accordingly lacks jurisdiction to consider the plaintiffs' FTCA claims. Item 12, pp. 5–13.

The plaintiffs argue, in response, that this court has jurisdiction, under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, to review the Secretary of Labor's determination that Ms. Doe's claim for emotional distress is covered by FECA. They maintain that the Secretary's determination was arbitrary and capricious, for two reasons, (1) because FECA covers only federal employees, and Jane Doe was not a federal employee at the time in question,[3] and (2) because claims for emotional distress are not covered by FECA. Item 15, pp. 4–12. They also argue that the exclusivity provisions of FECA cannot bar Jane Doe's breach of contract claim, *id.* at 9, or her claim based on wrongful disclosure of confidential information. *Id.* at 12–13. The defendant has filed

a reply brief. Item 17. Oral argument was held on February 2, 1996.

## DISCUSSION

At the outset, the court wishes to observe that this is a most disturbing case. First of all it is extraordinary, and appalling, that during the course of a training assignment at a federal government hospital, a student with no experience whatever of drawing blood from patients should be directed to obtain blood from an individual known to be infected with HIV. Second, it is perturbing that at the time of the incident, the student concerned had not executed an appointment letter formally establishing her status at the facility. And finally, it is most troubling that immediately following the incident, government officials hastily obtained the student's signature on an appointment letter, and, in her absence, initiated a FECA claim on her behalf.

■ The government's motion to dismiss, however, presents a narrow issue—whether or not the court has jurisdiction to consider the plaintiffs' FTCA claims. Our starting point must be to acknowledge that FECA provides the exclusive remedy against the federal government for work-related injuries sustained by federal employees. 5 U.S.C. § 8116(c).[4] *See Lance v. United States*, 70

---

**3.** The plaintiffs' principal argument is that Ms. Doe did not execute an appointment letter assigning her to government service until approximately three hours after the incident. The letter was cast in future terms, stating that "You *will be* assigned to our facility as Medical Technology Student–ECC–Phlebotomy November 28, 1990 under authority of 38 U.S.C. § 4114(a)(1)(A)." *See* Item 15, p. 6; Item 16, Ex. E (emphasis added). The plaintiffs maintain that the only logical implication of this language is that the letter was intended to trigger employment status prospectively, and that the government should be estopped from claiming that Ms. Doe was a federal employee at the time of the incident. In support of this argument, they offer a copy of a letter dated December 18, 1990, from Irvin E. Turner, Chief of the Personnel Service at the VAMC, to the New York District Office of the OWCP. Item 16, Ex. I. The letter concerns the application for FECA compensation made on behalf of Ms. Doe, and describes her appointment letter as "*activating her employment* as [a without compensation] Student." *Id.* (emphasis added). The plaintiffs contend that since Ms. Doe's employment was not activated until she signed the

appointment letter, three hours *after* the needle-stick incident, FECA cannot apply, and any determination by the Secretary of Labor that she *was* a federal employee at the time of the injury would be arbitrary and capricious. Item 15, pp. 6–7.

**4.** This provision states, in pertinent part:

The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

5 U.S.C. § 8116(c).

F.3d 1093, 1095 (9th Cir.1995); *Votteler v. United States,* 904 F.2d 128, 130 (2d Cir.), *cert. denied,* 498 U.S. 1000, 111 S.Ct. 560, 112 L.Ed.2d 567 (1990). Where FECA applies, the federal courts have no jurisdiction to entertain FTCA claims asserted by injured parties. *Id.*

■ Decisions by the Secretary of Labor allowing or denying the payment of awards under FECA are final and conclusive, and are not subject to judicial review. 5 U.S.C. § 8128(b).[5] Where the Secretary has determined that FECA is applicable, therefore, actions under FTCA are precluded. *Swafford v. United States,* 998 F.2d 837, 839–41 (10th Cir.1993); *McDaniel v. United States,* 970 F.2d 194, 196–98 (6th Cir.1992); *Grijalva v. United States,* 781 F.2d 472, 474 (5th Cir.), *cert. denied,* 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 42 (1986).[6] In cases in which there has been no decision by the Secretary concerning FECA coverage, but there is a substantial question as to whether FECA may apply, the proper course for the district court is to stay proceedings pending a final determination by the Secretary. *Figueroa v. United States,* 7 F.3d 1405, 1408 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994); *McDaniel v. United States,* 970 F.2d at 198; *Bruni v. United States,* 964 F.2d 76, 78–80 (1st Cir.1992). Only where the Secretary has made no decision, *and* there is no substantial question as to the applicability of FECA, should the court render a judgment. *Id.* "A substantial question exists unless it is *certain* that the Secretary would not find coverage." *Bruni v. United States,* 964 F.2d at 79.

In the present case, the government maintains that on January 15, 1991, the Secretary of Labor, through the OWCP, accepted a claim for FECA coverage of Ms. Doe's needle-stick injury of November 28, 1990, and that according to OWCP District Director Jonathan G. Lawrence, Ms. Doe is entitled to all benefits available under FECA. Item 12, p. 9. Because the Secretary has determined that FECA coverage applies to Ms. Doe's injury, it argues, the exclusive remedy provision of FECA bars the plaintiffs' FTCA claims, and this action should be dismissed. *Id.* at 10.

The plaintiffs contend that this court should disregard the declaration of OWCP District Director Lawrence, upon which the government relies. Item 15, p. 5. They maintain that the declaration:

lacks foundational merit and was written by Mr. Lawrence solely to accompany the Government's summary judgment motion . . .

Moreover, the declaration provides no foundation or rational explanation for the denial of this case, besides the "rubber stamp" defense of FECA exclusivity. Mr. Lawrence's declaration does not consider that this case is based on an emotional injury nor does he explain why Jane Doe was considered a federal employee. In sum, the declaration is worthless and should be disregarded by this court. *See* 5 U.S.C. § 706(2)(A).

*Id.* The plaintiffs then set forth their argument that Ms. Doe was not a federal employee at the time of the incident that was the root of her injury, and make their case that claims for emotional distress are not covered by FECA. Item 15, pp. 6–12.

■ As indicated above, a determination by the Secretary that FECA applies here would not be subject to judicial review,[7] and would preclude the plaintiffs' FTCA claims. It is not clear, however, that administrative consideration of the applicability of FECA in this case is complete. Mr. Lawrence's decla-

---

**5.** This provision states, in pertinent part, "The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—

    (1) final and conclusive for all purposes and with respect to all questions of law and fact; and

    (2) not subject to review by another official of the United States or by a court by mandamus or otherwise."

5 U.S.C. § 8128(b).

**6.** There is one exception to this rule: the district courts have jurisdiction over *constitutional* challenges to the Secretary's actions in administering FECA. *Paluca v. Secretary of Labor,* 813 F.2d 524, 526 (1st Cir.), *cert. denied,* 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987).

**7.** Again, unless challenged on constitutional grounds—*see supra,* n. 6.

ration indicates that the claim submitted on behalf of Ms. Doe was accepted by the Secretary, and that Ms. Doe would be entitled to FECA benefits. But Ms. Doe has made no claim for medical treatment or compensation and has, as yet, received no benefits. Neither, apparently, has she sought administrative review, within the Department of Labor, of the determination that FECA applies in her case. The court is not persuaded that the Secretary has, as yet, fully considered the issue of FECA applicability, or rendered a final decision on the issue, or that the plaintiffs' FTCA claims here are barred and must be dismissed at this time.

It is, however, apparent that a substantial question exists as to the applicability of FECA in this case. The Secretary has made what is evidently a preliminary determination, at least, that FECA does apply. On the other hand, the plaintiffs make a forceful argument that Ms. Doe was not a federal employee at the time of the incident that resulted in her alleged injuries.[8] They may yet make that argument to the Secretary. The proper course for the court is to stay consideration of the plaintiffs' FTCA claims pending the Secretary's final determination of FECA applicability. *Figueroa v. United States*, 7 F.3d at 1408; *McDaniel v. United States*, 970 F.2d at 198; *Bruni v. United States*, 964 F.2d at 78–80.

■ In addition to arguing that Ms. Doe was not a federal employee at the time of the needle-stick incident, the plaintiffs maintain that FECA does not cover claims for emotional distress. Item 15, pp. 10–12. Plainly, however, there are circumstances under which such claims are cognizable under FECA. *See Figueroa v. United States*, 7 F.3d at 1408; *Swafford v. United States*, 998 F.2d at 840–41; *McDaniel v. United States*, 970 F.2d at 196–97. Again, the question of whether the emotional distress the plaintiffs have suffered in this case is cognizable, and compensable, under FECA is properly decided by the Secretary, not by this court. *Id.*

The plaintiffs contend that Ms. Doe's contract claim for damages for emotional distress—based upon the alleged breach of a contractual duty purportedly owed to Ms. Doe under the memorandum of affiliation between the VAMC and ECC—is not subject to the exclusivity provisions of FECA. Item 15, p. 9. They cite no authority in support of this argument. It would appear that the plaintiffs have constructed a breach of contract claim merely as a means of attempting to avoid the exclusivity provisions of FECA. There is no merit to their position. If it is established that Ms. Doe was a federal employee for the purposes of FECA, and that she was injured during the performance of her duties, then her remedies under FECA are "exclusive of *all other remedies* against the United States for job-related injury or death." *Figueroa v. United States*, 7 F.3d at 1407 (citing 5 U.S.C. § 8116(c) (emphasis added)).

Finally, the plaintiffs argue that their FTCA claim for wrongful disclosure of confidential medical information concerning Ms. Doe's exposure to HIV is not precluded by FECA. Item 15, pp. 12–13. Again, the defendant appears, at least, to take the position that if Ms. Doe suffered injury as a result of the improper disclosure of medical information, such injury would be covered by FECA. Item 17, pp. 8–9. And again, the proper course for the court is to await the Secretary's decision on this issue.

At oral argument on February 2, 1996, the plaintiffs' attorney reemphasized that the plaintiffs do not wish to pursue an administrative remedy for their injuries under FECA. Such a position does not, however, preclude them from seeking a reversal by the Secretary of the preliminary determination that FECA applies in their case. In the event that they decide that they do not wish to seek such a reversal, they should so inform the court. At that time, the only prop-

---

8. On January 18, 1996, the defendant submitted a copy of the Ninth Circuit's recent decision in *Lance v. United States*, 70 F.3d 1093, in support of its position on Ms. Doe's status as an employee. In *Lance*, the court held that volunteer workers at Veterans Administration hospitals are "em-

ployees" for FECA purposes, pursuant to 5 U.S.C. § 8101(1)(B) and 38 U.S.C. § 513. *Lance v. United States*, 70 F.3d at 1095. It is far from clear, however, that at the time of her needle-stick injury Ms. Doe was acting as a "volunteer" within the meaning of those provisions.

er course for the court would be to issue an order dismissing this action.

### CONCLUSION

For the reasons given above, the defendant's motion to dismiss for lack of subject matter jurisdiction, Item 11, is denied. Further proceedings in this case will be stayed until such time as (1) the parties inform the court that the Secretary of Labor has issued a final determination as to whether, and the extent to which, FECA applies in this case, or (2) the court receives written notification from the plaintiffs that they intend to seek neither compensation under FECA nor reversal of the Secretary's preliminary determination that FECA does apply.

The attorney for the plaintiff shall notify the court not later than March 1, 1996, whether he desires to proceed with obtaining a final determination under FECA or whether he wishes the court to dismiss the complaint.

So ordered.